624 So.2d 921 (1993)
STATE of Louisiana
v.
William B. FIRSHING, III, and Gerard Jarabica.
No. 92-KA-1843.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1993.
Harry F. Connick, Dist. Atty., Douglas W. Freese, Asst. Dist. Atty., Richard Cuccia, Darren Roy, Law Clerks, New Orleans, for plaintiff/appellant.
Ferdinand J. Kleppner, Metairie, for defendant/appellee.
*922 Before ARMSTRONG, JONES and WALTZER, JJ.
ARMSTRONG, Judge.
Defendant, Gerard Jarabica, was charged by bill of information on January 9, 1991 with simple burglary of an inhabited dwelling, a violation of La.R.S. 14:62.2. After the State nolle prosequied that information and two others subsequently filed, the State charged the defendant a fourth time by bill of information on March 4, 1992. On June 29, 1992, the trial court granted defendant's motion to quash the fourth bill of information. The State now appeals. We affirm.
On December 11, 1990, Gerard Jarabica was arrested for simple burglary of a residence and possession of stolen property valued at $40,000.00. The following is a chronology of defendant Jarabica's journey through the criminal justice system.
January 9, 1991: In case number 347-245, defendant was charged with simple burglary of an inhabited dwelling.
January 18, 1991: Defendant pleads not guilty.
March 4, 1991: Motions continued by the trial court to March 28, 1991. Trial set for April 15, 1991.
March 28, 1991: Trial reset by court to May 15, 1991.
May 15, 1991: Trial continued at request of the State. Reset for June 13, 1991.
June 5, 1991: Defendant Jarabica's accomplice in the residence burglary, William Firshing III, is arrested.
June 13, 1991: Trial continued at request of the State. Reset for July 18, 1991.
July 18, 1991: State files nolle prosequi in information number 347-245 so that it can try defendants Jarabica and Firshing together. State files information number 350-783 charging both Jarabica and Firshing with simple burglary of an inhabited dwelling. Defendant Jarabica's bond transferred from 347-245 to 350-783. Status conference set for July 22, 1991.
July 22, 1991: Testimony of two defense witnesses perpetuated due to their moving out of and far from the court's jurisdiction. Jarabica and Firshing enter pleas of not guilty. Trial set for September 18, 1991.
August 30, 1991: Court resets trial for October 23, 1991.
October 23, 1991: Trial continued to December 10, 1991 on joint motion of defendants and State.
December 10, 1991: Defendant Firshing fails to appear for trial. Defendant Jarabica present. Court refuses to grant State's motion for continuance of Jarabica's trial so that both defendants can be tried together. State files nolle prosequi in information number 350-783 as to Jarabica. State files information number 353-564 as to defendant Jarabica. Court sets trial for Jarabica in number 353-564 for February 18, 1992. Defendant Firshing appears for trial. Court resets defendant Firshing's trial in number 350-783 for February 18, 1992.
February 18, 1992: Defendant Jarabica fails to appear for trial. Defendant Firshing appears. Continued on motion of State. Status hearing set for February 21, 1992.
February 21, 1992: Both defendants present. Status hearing continued to February 28, 1992 for the State.
February 28, 1992: Both defendants present. Status hearing continued to March 6, 1992 by the court.
March 4, 1992: State fills information number 354-966 charging both defendants, Jarabica and Firshing, with simple burglary of a residence, a violation of La. R.S. 14:62.2.
March 6, 1992: State files nolle prosequi in information number 350-783 as to defendant Firshing and information number 353-564 as to defendant Jarabica.
March 7, 1992: Both defendants enter pleas of not guilty as to information number 354-966.
June 29, 1992: Court grants motion to quash information number 354-966 as to both Jarabica and Firshing.
July 6, 1992: State files motion for appeal.
*923 In granting the motion to quash on June 29, 1992, the trial court stated:
All right. Let melet me say this. I want to look at all the facts in the case, but I think that somewhere, somehow or another, that this practice of nolle prossing to get the State to grant it's [sic] own continuance has to stop. And, I think it's an inequity in the law that maybe should be faced in the light of a broader perspective, because I believe that what we're dealing with here is the inequities in the system. A defendant doesn't have that right. He doesn't have the righthe doesn't have an equal right to say I'm not trying a case today and I'm going to have some device called a nolle prosse or whatever you want to call it, operateask for a continuance, denied, nolle prosequi, reinstitute the charge, at the detriment of the defendant's bond obligation and other things, besides a speedy trial. So, I feel that this issue is appropriate and somewhere, somehow, somebody is going to listen to what the truth is, because we're not going to play the game anymore that way. I think that it's my responsibility to stand pat with my feet in the sand and not move when I think the Government is abusing the system. I think there is an abusive system here. And, I think that people areyou're talking about procedural and substantiative [sic] due process. I never learned that in law school. All I learned in school was due process. Everyone is deserving their due process in the law. And, I think this is this type of activity in the court system is on it's [sic] face, volatile of due process. Now, I can see wherethey shouldI don't believe that the State should occupy the role of a Judge, and I think what's happening in these cases now is that the State is wearing two hats. They're wearing the hat of a prosecutor and they're also wearing the hat of a Judge, because the State should not be able to give itself, on its's [sic] own motion, it's [sic] continuance. So, I'm granting the defense's motion. Take me up.
The State complains that the trial court erred in granting Jarabica's motion to quash the fourth bill of information because it was filed within six (6) months of the dismissal of the previous bill of information. Additionally, the State contends that each of the previous prosecutions were timely instituted according to La.C.Cr.P. art. 576 and were not dismissed to avoid the time limitations of La.C.Cr.P. art. 578 or to gain time to prepare for trial. The State argues that the dismissal of the first bill of information was done simply for judicial economy so that the two defendants could be tried together. Finally, the State argues that the second and third bills of information were dismissed because the codefendant, Firshing, failed to appear for trial on December 10, 1991.
As to the issue of a speedy trial, the State argues that the length of the delay was reasonable because of the seriousness of the crime and because of the codefendant not appearing for trial. Moreover, the state argues that Jarabica has not shown that he was prejudiced by the delay because he has not lost witnesses or alibis.
Under C.Cr.P. art. 576, when a prosecution has been dismissed either with the defendant's consent, before the first witness is sworn, or because of a defect, error, or irregularity in the bill of information, a new prosecution for the same offense may be instituted either within six months of the dismissal or within the time limits set forth in C.Cr.P. arts. 571 and 572, whichever is longer.[1] In the present case, the State had six years from December 11, 1990 within which to institute prosecution because simple burglary of an inhabited dwelling is a felony necessarily punishable at hard labor. La.R.S. 14:62.2. However, C.Cr.P. art. 576 further provides that a new prosecution cannot be instituted following dismissal if the State cannot show that the dismissal was not for the purpose of avoiding the time limitations for the commencement *924 of trial set forth in C.Cr.P. art. 578. Under Article 578, in noncapital felony cases, no trial shall be commenced after two years from the date of institution of prosecution.
There is no question but that the prosecution in this case was timely commenced under Article 576, and it is not argued that the dismissal of the original prosecution was for the purpose of evading the time limitations of Article 578. The dispositive issue in this case is whether Jarabica's constitutional right to a speedy trial was violated even though there was no violation of the statutory time limitation.
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set forth the following four factors to determine whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant as a result of the delay. The Court stated that the length of the delay was a triggering mechanism; and until there was a delay that was presumptively prejudicial, there was no need to inquire into the other factors. The Court further stated that the length of a delay which would provoke such an inquiry was dependent upon the peculiar circumstances of the case. The Court noted that the reason for the delay was closely related to the length of the delay and that different weights should be given to different reasons. As to the defendant's assertion of his right to a speedy trial, the Court stated that the assertion of that right was entitled to strong evidentiary weight in determining whether the defendant was deprived of his right. Regarding the final factor, the Court stated that prejudice was to be assessed in the light of the interests of the defendant which the speedy trial right was designed to protect. The Court identified those interests as preventing oppressive pretrial incarceration, minimizing the anxiety and concern of the defendant, and limiting the possibility that the defense would be impaired.
In State v. Reaves, 376 So.2d 136 (La. 1979), the defendant was charged with possession of one marijuana cigarette, a misdemeanor, and trial was set and continued four times in the three and one-half months since charges had been brought. On the fourth trial date, the State moved for a continuance because its principal witness was absent. The trial court denied the continuance, and the State nolle prosequied the bill of information. The State then filed a new bill of information which the defendant moved to quash on the basis that he had been denied his right to a speedy trial. The trial court granted the motion, and the Supreme Court affirmed. The court stated that although the defendant had not been subjected to an extremely long delay, he was denied his right to a speedy trial. The continuances had been caused by the failure of the arresting officer to appear at trial to testify for the State, and the court stated that the responsibility for these repeated absences had to rest with the State. The defendant had not moved for a speedy trial before filing his motion to quash, but the court noted that the defendant had not made such a motion because at each postponement trial was reset for a fairly near date. The court stated that because the defendant was charged with a misdemeanor, the prejudice requirement was not as stringent and that the repeated delays might have ultimately forced the defendant to plead guilty to maintain his job and peace of mind.
Jarabica argues that the present case is virtually the same as Reaves and that as a result the trial court correctly granted the motion to quash. The State argues that Reaves is different from the present case because Reaves involved a less serious offense than the offense involved in the present case. The State argues that the following two cases are controlling.
In State v. Lollis, 521 So.2d 532 (La.App. 4th Cir.1988), the defendant was charged with indecent behavior with a juvenile in December, 1985, and trial was set for January, 1986. Instead, on the January date, there was a motion hearing set which was reset for March. The defendant's motion to suppress his confession was granted, and writs were taken. In July, the Supreme Court stayed all proceedings; and in October the Supreme Court denied a writ application. Trial was then set for early January, 1987; *925 but because a Prieur hearing was pending, trial was reset for late February. The trial was postponed to March 30 on which date the State moved for a continuance due to the absence of a witness. The trial court denied the continuance, and this court denied the State's writ application. The trial court then granted the defendant's motion to quash based on the denial of his right to a speedy trial. This court reversed the granting of the motion to quash even though the defendant had been subjected to a long delay. The court noted that the defendant had been charged with a more serious offense than that in Reaves and that a substantial portion of the delay was attributable to waiting for the resolution of defendant's pretrial motions. The court further noted that it was questionable whether the defendant had ever asserted his right to a speedy trial since there was nothing in the record showing that he had done so or that he had objected to any of the continuances.
In State v. Gale, 526 So.2d 861 (La.App. 4th Cir.1988), Gale and his codefendant were charged with six counts of aggravated burglary, one count of attempted first degree murder, and simple burglary of an inhabited dwelling. A hearing date was set for pre-trial motions. All motions were heard on that day except the motion to suppress which was continued five times; three times by the defendants, once by the State, and once on joint motion. The State entered a nolle prosequi. A new bill of information was filed charging the defendants with ten counts of armed robbery, one count of aggravated burglary, and simple burglary of an inhabited dwelling. A motion for speedy trial was filed. The trial court denied the defense motion to suppress and the codefendant requested and was granted time to apply for writs. This court denied the codefendant's application for writs and he applied to the supreme court for review. The supreme court granted the codefendant's request for a stay of the trial and remanded the matter to this court for consideration. This court affirmed the ruling of the trial court. The codefendant applied to the supreme court for review and his application was denied. Subsequently, Gale filed a motion to enlarge without bond contending that both his statutory and constitutional right to a speedy trial had been violated. The trial court denied relief. Gale filed a writ in this court and this court affirmed the denial of the motion to enlarge without bond, finding that Gale's right to a speedy trial had not been violated. Addressing Gale's claim that his constitutional right to a speedy trial had been violated, this court noted that the reason for the delay was in the most part attributable to the resolution of Gale's and his codefendant's suppression motions and appeals. Also, there was no suggestion that the delay would deprive Gale of a fair trial. This court concluded that absent a severance, Gale must await resolution of his codefendant's preliminary pleas and motions before the case can be ready for trial.
In State v. Cowger, 581 So.2d 283 (La.App. 5th Cir.1991), the defendant was charged with theft in January, 1989 for incidents occurring between July and September, 1986. From October, 1986 to May, 1990, the defendant was in jail in Alabama; and Jefferson Parish had two arrest warrants issued for the defendant and had a detainer placed on him. During this period, the defendant filed a pro se motion for a speedy trial in May, 1988. Two years later, the defendant was extradited to Louisiana and was arraigned in June, 1990. He then filed a motion to quash claiming a denial of his right to a speedy trial. The motion was denied, and the defendant pleaded guilty and filed a Crosby appeal complaining that his right to a speedy trial had been violated. The Fifth Circuit affirmed the denial of the motion to quash, finding that the defendant's right to a speedy trial had not been violated. The court stated that there was both a statutory right under C.Cr.P. 701 and a constitutional right to a speedy trial. There was no violation of the statutory right because a violation of Article 701 entitles the defendant to pretrial relief making moot after trial any allegation that the article was violated. The court further found that, even though the defendant had asserted his right to a speedy trial, and the trial was delayed due to the State's failure to timely institute extradition proceedings to bring the defendant to Louisiana for trial, the defendant had not been prejudiced by the *926 delay. Thus, there was no violation of his constitutional right to a speedy trial.
In State v. Leban, 611 So.2d 165 (La.App. 4th Cir.1992), writ denied, 619 So.2d 533 (La.1993), the defendant was charged with simple arson. The trial was set and continued eight times in the sixteen months since the charges had been brought. On the eighth trial date, the State moved for a continuance in order to identify and locate a witness it had known about for some time. The trial court denied the continuance, and the State entered a nolle prosequi. The State subsequently filed a new bill of information and the defendant moved to quash the new bill of information based on the denial of his right to a speedy trial. The trial court granted the motion. This court affirmed the trial court's decision noting that the majority of the continuances were at the request of the State. This court further noted that the final two continuances were granted because the State did not have its witnesses for trial, stating that the State had more than ample time to find out the witness' name and address. Finally, this court gave consideration to the trial court's concern over whether it was fair to the defendant to allow the State to reinstitute prosecution after dismissing a bill of information because the judge denied the State a continuance.
In the present case, the delay between the filing of the original bill of information and the granting of the motion to quash was approximately seventeen months. This period of delay should be considered presumptively prejudicial under the first factor of Barker v. Wingo, supra, thereby necessitating further analysis.
As to the second Barker factor, the reason for the delay, two of the three continuances in the first case, 347-245, were at the request of the State. One was on the court's own motion. In addition, the court reset the trial date once. None of the minute entries reflect why the continuances were granted. However, Jarabica, in his brief, contends that it was because of the State's failure to insure the presence of its witnesses and because of the State's failure to obtain sufficient evidence to complete the handwriting analysis which the State requested.
In the second case, 350-783, following the perpetuation of testimony of two defense witnesses, the trial was continued once on the court's motion, and once on joint motion by the State and defense.
In the third case, 353-564, a nolle prosequi was entered prior to the initial trial date.
Also to be considered is the delay resulting from the State's three entries of a nolle prosequi. The State entered the first nolle prosequi as to information number 347-245 in the interest of judicial economy so that both defendants could be tried together. The State entered the second nolle prosequi, in information number 350-783, because the court refused a continuance when the codefendant, Firshing, initially failed to appear for trial on December 10, 1991. When the court immediately ordered Jarabica released from his bail obligation, the State, apparently wishing to keep Jarabica under some sort of bail obligation, filed information number 353-564. Information number 350-783 was still in effect as to defendant Firshing. Therefore, defendant Jarabica and defendant Firshing stood indicted for the same crime under separate informations. The State, however, could have named defendant Firshing in that second information. The third nolle prosequi, in information number 353-564, was entered at the same time the nolle prosequi was entered in information number 350-783 as to defendant Firshing. Both of these nolle prosequis were entered because two days earlier, the State had filed information number 354-966, once again jointly indicting Jarabica and Firshing.
The third Barker factor deals with the defendant's assertion of his right to a speedy trial. There is no motion for speedy trial in the record. Additionally, none of the minute entries indicate that Jarabica objected to any of the continuances. The first actual complaint of denial of a speedy trial that is in the record is the motion to quash.
The final Barker factor is the prejudice to Jarabica caused by the delay. In his brief, Jarabica states that he has had to appear in court repeatedly and to retain counsel for this protracted litigation. Jarabica points out that he has been deprived of the ability *927 to present the live testimony of two witnesses to events having a direct bearing on the issues of the trial.
Taking all of the Barker factors into consideration, we are unable to say that the trial court abused its discretion in granting the motion to quash. Four separate bills of information were filed. On three separate occasions the State entered a nolle prosequi. Like Leban, supra, the second nolle prosequi was entered because the court refused a continuance and the State was forced to trial. The third nolle prosequi was entered because the State failed to name the codefendant, Firshing, on the second bill of information. On four separate occasions, Jarabica, with retained counsel, had to make pretrial appearances. Notably, the delays involved in bringing Jarabica and his codefendant, Firshing, to trial were not attributable to waiting for the resolution of defendants' pretrial motions. See Gale, Lollis, supra. Furthermore, because of the State's continuances and subsequent nolle prosequi in the first case, 347-245, the defendant was forced to perpetuate the testimony of two defense witnesses leaving the jurisdiction. One final consideration is the concern voiced by the trial judge about the inequity of a law which allows the State to grant its own continuance by entering a nolle prosequi. See Leban, supra. Therefore, considering all of the circumstances, the trial judge did not err in granting Jarabica's motion to quash.
For the foregoing reasons, we affirm the judgment of the trial court quashing bill of information number 354-966 as to defendant Gerard Jarabica.
AFFIRMED
NOTES
[1] C.Cr.P. art. 571 provides that there is no time limitation for the institution of prosecution for a crime punishable by death or life imprisonment. C.Cr.P. art. 572 provides that for a felony necessarily punishable by imprisonment at hard labor, prosecution must be instituted within six years of the commission of the offense. The time period is four years for felonies not necessarily punishable at hard labor, and it is two years for misdemeanors punishable by fine or imprisonment. It is six months for misdemeanors punishable only by a fine or forfeiture.